1: CV 01 - 0327

AO 241 (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| **United States District Court** | District | Middle |
|---|---|---|

| Name | | |
|---|---|---|
| Mark Bailey | Prisoner No. DN-0370 | Case No. |

**Place of Confinement**
State Correctional Institution – Albion
10745 Rt. 18
Albion, PA  16475-0002

| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody of petitioner) |
|---|---|
| Mark Bailey | V. Warden Edward Brennan of SCI-Albion and D. Michael Fisher, Attorney General of Pennsylvania |

The Attorney General of the State of: Pennsylvania

## PETITION

1. Name and location of court which entered the judgment of conviction under attack  Court of Common Pleas of Potter County, Pennsylvania

2. Date of judgment of conviction  February 4, 1998

3. Length of sentence  10 to 20 years of incarceration

4. Nature of offense involved (all counts)  Count I – aggravated assault;  Count II – aggravated assault;  Count III – aggravated assault;  Count IV – aggravated assault;  plus four counts simple assault; four counts endangering welfare of child

5. What was your plea? (Check one)
   (a) Not guilty          ☒
   (b) Guilty              ☐
   (c) Nolo contendere     ☐
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury               ☒
   (b) Judge only         ☐

7. Did you testify at the trial?
   Yes ☒ No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☒ No ☐

AO 241 (Rev. 5/85)

9. If you did appeal, answer the following:

(a) Name of court ___Superior Court of Pennsylvania___

(b) Result___Judgment of sentence affirmed___

(c) Date of result and citation, if known ___August 10, 1999    Superior Court No.1451 Pittsburgh 1998___

(d) Grounds raised ___See attached sheet which sets forth issues.___

___

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court ___Pennsylvania Supreme Court___

(2) Result ___Petition for Allowance of Appeal was denied___

___

(3) Date of result and citation, if known ___March 23, 2000    #599 W.D. Allocatur 1999___

(4) Grounds raised ___Some grounds raised in Superior Court.___

___See attached sheet.___

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court ___N/A___

(2) Result ___

___

(3) Date of result and citation, if known ___

(4) Grounds raised ___

___

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes ☐ No ☒

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court ___

(2) Nature of proceeding ___

___

(3) Grounds raised ___

9. (d) (e) 4)   Statement of Issues presented to the
                Pennsylvania Superior Court and to the
                Pennsylvania Supreme Court.

1.  Was trial counsel ineffective for not objecting or
bringing out and did the District Attorney err in bringing
out unrelated bad acts and/or criminal conduct of Mr.
Bailey, thereby tainting Mr. Bailey and denying him his
right to due process and a fair trial?

2.  Was trial counsel ineffective for not requesting a
limiting instruction or curative instruction concerning the
unrelated bad acts and/or criminal conduct of Mr. Bailey
and did the trial Judge err in not instructing the jury,
thereby denying Mr. Bailey his right to due process and a
fair trial

3.  Did the District Attorney make improper closing
arguments to the jury by giving statements of personal
opinion regarding Mr. Bailey's guilt, by arguing Mr. Bailey
was a bad person and therefore guilty, by referencing
repeatedly unrelated bad acts and/or unrelated criminal
conduct and by arguing in a highly inflammatory manner,
thereby denying Mr. Bailey his right to due process and a
fair trial?  Was trial counsel ineffective for not properly
objecting to these comments

4.  Was trial counsel ineffective for not presenting
character testimony on behalf of Mr. Bailey, thereby
denying him his right to due process and a fair trial?

5.  Did the trial Judge err in finding a corpus delicti was made out to allow the introduction of Mr. Bailey's statements and, further, did the trial Judge err and give an improper instruction to the jury on the issue of corpus delicti and statements and defense?  Was trial counsel ineffective for not properly objecting or preserving the issue for appeal?

6.  Was the verdict against the weight of the evidence and was the evidence insufficient to support the verdict?  Was trial counsel ineffective for not properly preserving this issue?

7.  Did the prosecutor err in bringing out and was trial counsel ineffective for not objecting in allowing the medical experts to give opinions that the child victim was the subject of child abuse since there was no set definition, the testimony did not meet the requirement for battered child syndrome and the testimony went beyond medical testimony to a factual and legal issue for the jury and presented prejudicial and confusing testimony?  Did the improper testimony of the experts on abuse deny Mr. Bailey his right to due process and a fair trial?  Should their testimony be stricken due to the contradictory expert testimony?

AO 241, (Rev. 5/85)

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐   No ☐

(5) Result _____

(6) Date of result _____

(b)  As to any second petition, application or motion give the same information:

(1) Name of court __N/A_____

(2) Nature of proceeding _____

_____

(3) Grounds raised _____

_____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐   No ☐

(5) Result _____

(6) Date of result _____

(c)  Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
(1) First petition, etc.        Yes ☐   No ☐
(2) Second petition, etc.     Yes ☐   No ☐

(d)  If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

_____

12.  State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.

CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

AO 241 (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: _____ See attached sheet for the seven issues being presented for habeas review and the supporting facts, all of which are incorporated by reference._____

Supporting FACTS (state *briefly* without citing cases or law) _____

_____

_____

_____

_____

_____

_____

_____

B. Ground two: _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

_____

_____

AO 241 (Rev. 5/85)

C. Ground three: _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

D. Ground four _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

    Not applicable.

_____

_____

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack? Yes ☐   No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing   Harold B. Fink, Jr., Esquire _____

    32 Main Street, P.O. Box 403, Port Allegheny, PA  16743

(b) At arraignment and plea   Harold B. Fink, Jr., Esquire _____

    32 Main Street, P.O. Box 403, Port Allegheny, PA  16743

AO 241 (Rev. 5/85)

(c) At trial ___Harold B. Fink, Jr, Esquire___

___32 Main Street, P.O. Box 403, Port Allegheny, PA 16743___

(d) At sentencing ___Harold B. Fink, Jr., Esquire___

___32 Main Street, P.O. Box 403, Port Allegheny, PA 16743___

(e) On appeal ___Samuel C. Stretton, Esquire___

___301 S. High Street, P.O. Box 3231, West Chester, PA 19381___

(f) In any post-conviction proceeding ___None___

(g) On appeal from any adverse ruling in a post-conviction proceeding ___None___

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ☒X No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☒X
(a) If so, give name and location of court which imposed sentence to be served in the future: _____

(b) Give date and length of the above sentence: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☐

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

*Samuel C Stretton*

Signature of Attorney (if any)
Samuel C. Stretton, Esquire

I declare under penalty of perjury that the foregoing is true and correct. Executed on

___2/19/01___
(date)

*S C Stretton*

Signature of Petitioner
Samuel C. Stretton, Esquire on
behalf of Mark Bailey

(7)

12. <u>Grounds for Habeas Relief</u>.

A.   Ground One - <u>Trial counsel was ineffective for not</u>
<u>properly objecting or bringing out and the District</u>
<u>Attorney erred in bringing out unrelated bad acts and/or</u>
<u>criminal conduct of Mr. Bailey, thereby tainting Mr. Bailey</u>
<u>and denying him his right to due process and a fair trial</u>.

<u>Supporting Facts</u>

The Petitioner, Mark Bailey, was charged with four
counts of aggravated assault, four counts of simple
assault, four counts of endangering the welfare of a child
arising out of allegations that he caused injuries to the
ankle, legs and ribs of the minor child, Rebecca Moore, on
or about February 3, 1996 through September 23, 1996 in
Coudersport, Roulette Township, Potter County,
Pennsylvania.  Mr. Bailey testified during his trial and
vigorously denied that he had any intention of hurting the
child and denied that he was guilty of the criminal
charges.

A review of the trial testimony and trial record in
this case reveals repeated instances of the District
Attorney and sometimes even defense counsel bringing out
unrelated alleged criminal conduct of Mr. Bailey.  Mr.
Bailey was labeled repeatedly as someone with a temper out

1

of control, someone who was in a mental institution for
temper, someone who broke numerous windshields with his
fist, someone who broke his truck windows with a crow bar
in a dispute with a girlfriend, someone who hit prior
girlfriends, someone who may have battered the older baby
sister, Jennifer, and someone who may have been precluded
from seeing his own child due to alleged misconduct.  There
were no timely objections or motions for mistrial from
trial counsel.  There were no limiting instructions as to
the purpose of this testimony.  As will be seen in the
third ground for relief in this Petition, the District
Attorney then argued for Mr. Bailey's conviction because of
the unrelated bad conduct.  The trial record, when
reviewed, is so blatant with references to the unrelated
bad acts that it is clear the jury verdict was tainted and
it would be impossible to determine whether Mr. Bailey was
convicted on the evidence or on the fact that the jury was
told he was a very bad person and, therefore, guilty
because he was a bad person.

A review of the Superior Court Opinion is very
disappointing since the Superior Court's Opinion never
directed itself to the overall picture of prosecutorial
abuse and counsel's ineffectiveness.  The Superior Court's
Opinion went out of its way to minimize or justify the

2

references to prior bad acts.   But, a fair reading of the transcripts clearly reveals the unfairness of the conclusions reached by the Superior Court.   This case is an extreme case where the entire record is polluted with what should be inadmissible bad acts.

Initially, trial counsel, Mr. Fink, was ineffective for bringing out prior injuries to the older daughter, Jennifer.   During his cross examination of Lori Moore, Mr. Fink brought out that Jennifer had the same symptoms on her legs as the baby Rebecca and Dr. Asar did not know what caused them (A-199, A-200, N.T. 118, 199).   Certainly, Mr. Fink would have been aware of that issue because, in the statement of Mr. Bailey to the police, Mr. Bailey had mentioned Jennifer had black and blue marks and similar injuries (A-30)(Statement of Mark Bailey).   Mr. Fink not only brought out those matters but continued to question on those issues (A-199, A-200, N.T. 118, 119).

The problem was compounded when the District Attorney, without objection, brought out that the child Jennifer had become afraid of Mr. Bailey (A-206, N.T. 204).   The impression was clearly left with the jury, through the ineffectiveness of Mr. Fink and the redirect examination by the District Attorney, that the child Jennifer had also been beaten or injured by Mr. Bailey.

3

The District Attorney then further compounded that
when, without objection, he brought out on his redirect
again that the child Jennifer had similar bruises to the
child Rebecca and those bruises did not appear until Mr.
Bailey began living with the family (A-209, A-210, N.T.
207, 208).  Although objection was made, no limiting
instruction was requested.

During the cross examination of the sister, Tammy
Baker, Mr. Fink again brought out that the child Jennifer
had similar looking injuries to the child Rebecca (A-230,
N.T. 228).

The reference to unrelated criminal conduct became
compounded during the playing of the videotape statement
made by Mr. Bailey to State Police Officer William Dawson
(A-259, N.T. 257).  The transcript of the tape was
introduced as an exhibit and is found at pages A-24 through
A-31 of the Reproduced Record presented to the Superior
Court.

It should be noted there was no objection to the
playing of the tape or request to redact portions (A-259,
N.T. 257).  But, the tape itself contained reference to
other bad acts and bad temper.  On the tape, there were
discussions about how Mr. Bailey has a very bad temper and
flies off the handle (A-28, See Statement of Bailey).  Mr.

4

Bailey, on the tape, mentions that he had to be admitted to
Bradford Hospital for bad temper and was taking medication
for it (A-28, A-29, See Statement of Bailey). Mr. Bailey,
on the tape, indicated he hit his prior girlfriend, Jodi
Murray, and also struck Lori Moore (A-30, See Statement of
Bailey). Again, there was no attempt to redact these
comments although there was no relevance to the current
charges. There were references to the child Jennifer
having black and blue marks on her ear in the statement of
Mr. Bailey (A-30, See Statement of Bailey). There was also
reference to him picking up the child Alan by his ears (A-
31, See Statement of Bailey).

During the cross examination by the District Attorney
of the defense witness, Michael Hicks, the District
Attorney had Mr. Hicks admit that Mr. Bailey had a strong
temper (A-294, N.T. 293, 294). The District Attorney then
referenced the aforementioned taped confession in which Mr.
Bailey stated he had to go to Bradford Hospital for his
anger and the District Attorney cross examined Mr. Hicks on
those comments (A-294, A-295, N.T. 293, 294).

The District Attorney then cross examined Mr. Hicks
about Mr. Bailey's relationship with his prior girlfriend,
using the tape and the reference to the striking of the
girlfriend on the tape (A-296, N.T. 295). The District

5

Attorney also referenced Mr. Bailey's indication on the tape that he had struck the girlfriend, Lori Moore (A-296, N.T. 295). Mr. Hicks was then cross examined about counseling Mr. Bailey against hitting people (A-296, N.T. 295). Again, there was no objection by Mr. Fink.

During the cross examination of Mr. Bailey's mother, Martha Bailey, the District Attorney asked Mrs. Bailey whether or not her son struck his girlfriend and she indicated she did not know (A-302, A-303, N.T. 301, 302). He asked her if he hit his girlfriend Lori (A-303, N.T.302). She was questioned about Mr. Bailey being placed in a psychiatric unit (A-303, N.T. 302). The District Attorney asked her why he was in a psychiatric unit and the mother answered that it was due to the problems between the two different girlfriends (A-304, N.T. 303).

The District Attorney then brought out that Mr. Bailey would regularly smash windshields (A-305, A-306, N.T. 304, 305). The District Attorney brought out that the mother did not know whether Mr. Bailey smashed his own windshields or those of other people (A-306, N.T. 305).

Mark Bailey then testified in his own defense and a great portion of the cross-examination was on unrelated prior bad acts. The District Attorney started out by referencing that Mr. Bailey was taking medication to

6

control his temper (A-342, N.T. 341).  The District
Attorney elicited that the temper of Mr. Bailey at times
caused him to go overboard (A-343, N.T. 342).  He elicited
that Mr. Bailey was, "more angry than the other person gets
angry." (A-343, N.T. 342).  The District Attorney then
asked him how many times he broke windshields and Mr.
Bailey's answer was, "a lot more than nine." (A-343, A-344,
N.T. 342, 343).  There were absolutely no objections by
defense counsel.  The District Attorney then asked about
the various instances of smashing windshields.  Mr. Bailey,
without any objection by his counsel, then spoke of a time
when he grabbed a t-bar out of the back of his truck and
smashed all the windows because of an argument with his ex-
girlfriend over not taking the truck out of the woods (A-
344, N.T. 343).  Mr. Bailey then stated he had to replace
nine windshields in the last five to six years (A-344, N.T.
343).  The District Attorney questioned Mr. Bailey on how
easy it was to break windshields with his fist (A-344, N.T.
343).

The District Attorney then brought out that Mr. Bailey
went to Warren State Hospital, which was a mental
institution (A-348, N.T. 347).  The District Attorney then
cross examined Mr. Bailey about his statement and going to

the psychiatric institute at Bradford Hospital (A-351, N.T. 350).

On re-cross examination, the District Attorney brought out that Mr. Bailey had only seen his own son three times in a nine month period (A-366, A-367, N.T. 365, 366). At that time, Mr. Fink finally objected but the objection was overruled (A-367, A-368, N.T. 366, 367). The suggestion clearly was that he was not fit to see his own child and/or was a bad father.

The unrelated bad acts were then used by the District Attorney in his closing speech to state that Mr. Bailey was a very bad person and, therefore, guilty.

"I suggest to you and submit very strongly that the whole evidence in this case suggests that Mr. Bailey is not a very good young man. Whether you believe he is guilty of these crimes or not, I think everyone has to agree that this is not a very good young man. This is either a young man who is very malicious and cruel or it's a young man who is very sick. It's a young man who has acknowledged to you at least on nine occasions because of his anger he smashes windshields out of vehicles. It's a young man who on eight of those occasions apparently used his fists to do that. I've asked you whether or not you know anyone you would consider to be a good young man who is so out of control, so little ability to control his temper that you would consider that person to be a very good young man. This is also a young man who in spite of the fact Mr. Fink has read to you, has a Court Order that allowed him to see his child every how many often times it is, I think it was every other weekend, holidays, and so forth. Your recollection of that will have to control that. In spite of that he hasn't barely seen his own child.... I suggest to you that this is a young man who is in trouble, has been

in trouble for years....   I suggest to you that
character of this young man has been shown to you in
this case and circumstantial evidence that this is a
young man who abuses children and this is a man who
did in fact in this case abuse Rebecca Moore."  (A-
378, A-379, A-380)(emphasis added).  (Trial N.T. 377,
378, 379).

The unfairness of the Superior Court's Memorandum

Opinion is seen on page 32 where the Superior Court stated,

"Although he discussed appellant's prior bad acts during

closing, the prosecutor did not refer to the prior

misconduct to demonstrate that appellant was a bad man and,

therefore, guilty of the crimes charged."  As seen from the

above highlighted quote, the Superior Court was wrong.

The District Attorney, in his closing speech,

reemphasized the temper of Mr. Bailey and how it caused him

to do bad acts (A-384, N.T. 383).  Then, in his closing

speech, the District Attorney referenced the child

Jennifer's injuries and suggested that Mr. Bailey may have

done that.

"You know coincidentally even though nothing was
discovered relative to these problems remember the
testimony that Jennifer did not have any problems with
swollen ears and swollen feet until Mr. Bailey came to
live and maybe it's just a coincidence and then maybe
not." (A-385, N.T. 384).

Mr. Fink did object finally to the argument regarding

Jennifer (A-391, N.T. 390).  Finally, the Judge gave a

curative instruction that Jennifer was not alleged to be

the victim and the jury should disregard the comment. (A-393, A-394, N.T. 392, 393). This was the only curative instruction given. The Superior Court, on page 32 of its Memorandum found this curative instruction to be sufficient, totally ignoring the unobjected to and lack of curative instruction for repeated reference to bad acts.

The use of bad acts or unrelated criminal conduct has been the basis of a reversal of a criminal conviction for many years.

In essence, the Commonwealth did everything it could without objection from trial counsel, Mr. Fink, to show that Mr. Bailey was a very bad and dangerous person. He beat up girlfriends, smashed windows, he used his fists, he used crow bars, and the other child had similar injuries, etc. No curative instructions were given except the one referenced above. The Commonwealth did not try to attempt to fit the bad acts into any exception such as motive, intent or common plan, scheme or design. In fact, the Commonwealth's argument essentially said he was a very bad person with the inference he should be convicted.

Surprisingly and shockingly, the Superior Court condoned and/or excused this unfair type of argument as "permissible oratorical flair." (Memorandum, page 29). If that is the case, the entire nature of trying criminal

cases ought to be changed since the statements of the prosecutor are in total contradiction to established case law.

The Petitioner, Mr. Bailey, was prejudiced by the testimony of unrelated bad acts, the prosecutor's use of the bad acts in argument and by his counsel's ineffectiveness.  Mr. Bailey requests his Petition for Habeas Corpus be granted.

B.  Ground Two -  <u>Trial counsel was ineffective for not requesting and the trial Judge erred in not giving limiting instructions or curative instructions concerning unrelated bad acts and/or criminal conduct of Mr. Bailey</u>.

<u>Supporting Facts</u>

The first section of this Habeas Petition sets forth in detail, with citation to the record, references in the trial record to prior criminal and/or bad acts of Mr. Bailey both during the trial testimony and in the closing argument of the District Attorney.  A review of the record indicates there were no curative or limiting instructions given except at the very end of the closing argument when, finally, Mr. Fink raised the issue about the reference in the argument to the child Jennifer.  Only then did the Judge say the following.

"I want to point out to you that Jennifer is not alleged to be a victim here, and to the extent it has been suggested she is in some manner involved or a victim of any criminal acts attributed to the Defendant, to that extent that has been suggested, you should totally and completely disregard it. This case has allegations of multiple incidents, which I will go into, but it has essentially an allegation of one Defendant and one victim." (A-393, A-394, N.T. 393, 393).

There were no curative or limiting instructions as to the striking of the former girlfriend, the striking of the present girlfriend, the numerous breaking of windshields, the very bad temper of the Defendant, the psychiatric treatment for bad temper, etc.

Trial counsel took no action to request limiting or curative instructions. The law is quite clear in Pennsylvania that there has to be such limiting instructions if there is going to be use of prior bad acts and these cases will be provided.

The Superior Court's Memorandum decision discussing this issue is particularly disappointing. The Superior Court, despite a record filled with unrelated bad acts, found no prejudice to the lack of limiting instructions (Pages 25, 26, 27 of the Superior Court Memorandum). The Superior Court found no prejudice since the defense, through trial counsel, brought out bad acts and problems. But, the Superior Court apparently ignored that this aspect

12

was part of the claim for ineffective assistance of
counsel, which by itself warranted a new trial.

Mr. Bailey contends limiting instructions had to be
given or else the jury would not know how to use the
unrelated bad acts in evaluating guilt or innocence and
would have used that evidence improperly.  Mr. Bailey
respectfully requests this Honorable Court grant his
Petition for Habeas Corpus.

C.  Ground Three -  <u>The District Attorney made an
improper closing speech to the jury by giving statements of
personal opinion regarding Mr. Bailey's guilt, by arguing
that Mr. Bailey was a bad person and therefore guilty, by
referencing repeatedly unrelated bad acts and by arguing in
a highly inflammatory manner.</u>


<u>Supporting Facts</u>

A review of the District Attorney's closing argument
clearly reveals a classic example of what not to say in a
closing speech.  The District Attorney spent a great deal
of time arguing and discussing the prior unrelated bad acts
in the context of suggesting that Mr. Bailey was a bad
person, a very bad person and, therefore, guilty.  Portions
of the prosecutor's speech has been referenced in the first

statement of grounds section of this Petition and will be

incorporated by reference.

"I suggest to you and submit very strongly that
the whole evidence in this case suggests that Mr.
Bailey is not a very good young man.  Whether you
believe he is guilty of these crimes or not, I think
everyone has to agree that this is not a very good
young man.  This is either a young man who is very
malicious and cruel or it's a young man who is very
sick.  It's a young man who has acknowledged to you at
least on nine occasions because of his anger he
smashes windshields out of vehicles.  It's a young man
who on eight of those occasions apparently used his
fists to do that.  I've asked you whether or not you
know anyone you would consider to be a good young man
who is so out of control, so little ability to control
his temper that you would consider that person to be a
very good young man.  This is also a young man who in
spite of the fact Mr. Fink has read to you, has a
Court Order that allowed him to see his child every
how many often times it is, I think it is every other
weekend, holidays, and so forth.  Your recollection of
that will have to control that.  In spite of that he
hasn't barely seen his own child....  I suggest to you
that this is a young man who is in trouble, has been
in trouble for years....  I suggest to you that
character of this young man has been shown to you in
this case and circumstantial evidence that this is a
young man who abuses children and this is a man who
did in fact in this case abuse Rebecca Moore."  (A-
378, A-379, A-380) (emphasis added) (N.T. 377, 378).

"You know coincidentally even though nothing was
discovered relative to these problems remember the
testimony that Jennifer did not have any problems with
swollen ears and swollen feet until Mr. Bailey came to
live and maybe it's just a coincidence and then maybe
not." (A-385) (emphasis added) (N.T. 384).

These passages in the testimony stand in stark contrast to

the Superior Court's statements and mistaken comments in

its Memorandum Opinion that "The prosecutor did not refer

14

to the prior misconduct to demonstrate the appellant was a
bad man...." (Superior Court Memorandum, pgs. 31, 32).  As
noted previously, the only objection was to the reference
and argument by the District Attorney to the child
Jennifer's injuries and ultimately an instruction was given
to disregard that.  This was done at the end of the closing
speech and not at the time the statement was made.

The District Attorney, in his closing speech, beside
referencing the bad acts, gave his statement of personal
opinion.

> "It is a relatively simple concept, and I believe
> that there was an abundance of testimony from all
> these doctors that were involved before any confession
> was admitted into evidence, any admission that was
> made that became a part of the record that there was
> an instance of child abuse."
> (A-377, N.T. 376).

The Superior Court, in its Memorandum Opinion, page 33,
dismissed this blatant statement of personal opinion as a
"distorted view of the prosecutorial closing argument."

The District Attorney referenced that Mr. Bailey
hardly ever saw his own child, again suggesting that there
was something wrong with Mr. Bailey (A-379, N.T. 378).  As
noted previously, he talked about Mr. Bailey not being a
good person but being a malicious person due to his other
unrelated bad acts (A-378, A-379, N.T. 377, 378).  He
talked about how Mr. Bailey has been in trouble for years,

again trying to prejudice and inflame the jury (A-378, A-379, N.T. 377, 378).

The District Attorney then argued to the jury that Mr. Bailey's character, as shaped by these bad acts, is one of someone who abuses children.

> "I suggest to you that the character of this young man has been shown to you in this case and circumstantial evidence that this is a man who abuses children and this is a man who did in fact in this case abuse Rebecca Moore."  (A-380, N.T. 379).

It is hard to imagine anything more prejudicial than the District Attorney stating that Mr. Bailey abuses other children.  There was not one scintilla of evidence of that and only a suggestion regarding the child Jennifer. Unfortunately, the Superior Court ignored these comments in its Memorandum.

The District Attorney continued to inflame the jury with prior bad acts, which had no relevancy to this case, by telling the jury that Mr. Bailey had been in trouble for years (A-379, N.T. 378).

The District Attorney then talked about the bad temper of Mr. Bailey and how that was relevant.  He talked about a man who smashed windshields constantly who had a problem with his temper and could not hold his temper (A-384, N.T. 383).  He talked about this being recklessness in terms there being a child with broken bones (A-384, N.T. 383).

16

In essence, he was trying to convict Mr. Bailey because of his bad temper and was trying to divert the jurors from viewing the evidence.

The District Attorney then improperly gave his personal opinion after talking about the injuries and the bad temper.

> "... I think clearly established the recklessness to show that this man is guilty of the charges of which he faces a requisite of the recklessness." (A-384, N.T. 383).

As noted in the earlier argument, he referenced the child Jennifer with the suggestion that this might not be a coincidence, thereby directly telling the jury that he was guilty of that also (A-385, N.T. 384).

The District Attorney then, to inflame the jury and again referring to alleged prior instances of bad conduct, made the following statement.

> "Again, it is the credibility of Mr. Bailey that is the key in this case. At this point, he is a person who indicates he cares about children generally, he cares about Rebecca Moore. He doesn't care enough about his own child to insist that he get visitation which are ordered by the Court." (A-388, N.T. 387).

The above statement is extremely unfair and prejudicial. There was other evidence regarding the lack of visitation during the trial. The fact Mr. Bailey was unable to see his own child except on a few occasions had nothing to do

with whether or not he cared about children.  The District

Attorney knew that but improperly referenced the lack of

visitation to suggest guilt.  This was unfair and highly

inflammatory and improper.

The District Attorney then, to inflame the jury,

started name calling.

> "Is Mark Bailey, is he just a pathetic human
> being?  Is he someone who is sick that can't control
> himself and can't control his anger or is he an evil
> sadistic person who enjoys inflicting pain on a child.
> You can debate that for yourselves.  I suggest to you
> for the purpose of this proceeding it doesn't matter.
> It doesn't matter.  His lack of control is not a
> defense." (A-389, N.T. 388)).

The District Attorney then again refers to prior bad

acts as evidence of guilt.

> "You know I would suggest to you that angry
> people don't belong taking care or having contact with
> little children.  This man is smashing windshields
> because he can't control his anger and he is a man who
> is an abuser of babies.  Like Rebecca Moore because he
> can't control his anger.  This is an unstable and
> angry and violent person.  You know there is nothing
> more defenseless than a human baby.  Every other
> species has some form of defense mechanism when it is
> an infant other than human babies and in this case he
> has taken it out on the most defenseless of human
> beings, a child less than eight months old." (A-389,
> A-390, N.T. 388, 389).

The above quoted statement is absolutely an outrageous

statement by a prosecutor.  He has asked the jury to

convict him due to unrelated acts.  He has called him an

18

abuser of babies when there was no evidence that there are any other babies he had abused.

What is particularly upsetting to the writer of this Petition who has tried many jury trials is why the Superior Court found nothing wrong with this type of closing speech. The argument of this District Attorney is not acceptable argument under plain case law and past custom and practice. One starts to lose faith if the Superior Court is going to engage in contorted reasoning to justify what was plainly wrong by the prosecutor particularly when any fair minded person could see the trial process was then tainted.

Trial counsel was ineffective for not objecting and not moving for a mistrial and not asking for curative instructions.  His client was essentially painted as a very evil person in a very inflammatory way.  The verdict clearly was tainted by this improper argument yet trial counsel did not object to the closing or ask for curative instructions.

Further, the Superior Court totally ignored the cumulative effect of the comments.

Mr. Bailey respectfully requests this Honorable Court grant his Writ of Habeas Corpus for the reasons above stated.

19

D.  Ground Four -  <u>Trial counsel was ineffective for</u>
<u>not presenting character testimony on behalf of Mr. Bailey</u>.


<u>Supporting Facts</u>

During the trial, no character or reputation testimony
was presented on behalf of Mr. Bailey.  Mr. Fink was
ineffective for not doing so and Pennsylvania requires such
testimony.  The appropriate cases will be provided at the
time of the briefing schedule since the Habeas Petition
instructions preclude the presentation of case law
presently.

Mr. Bailey respectfully contends that his trial
counsel, Mr. Fink, had every reason to use character
testimony and failed to do so.  Character testimony is
substantive testimony which would have aided the jury in
its determination.  The Superior Court stated present
counsel did not give the names of potential character
witnesses (Superior Court Memorandum, page 15).  But, no
hearing was held since present counsel was retained only
for appellate purposes.  The Superior Court should have
remanded the case so this issue could have been further
developed.  Trial counsel was ineffective for not calling
character witnesses.  Mr. Bailey will provide a list of
character witnesses, which include his mother, at a

hearing.  Mr. Bailey respectfully requests this Honorable Court grant this Petition for Habeas Corpus.

E.   Ground Five -  The trial Judge erred and did not give the correct charge to the jury on the issue of corpus delicti and trial counsel was ineffective for not properly objecting or preserving this issue.  Further, the trial Judge erred in finding corpus delicti was made out, thereby allowing the admission of the statement of Mr. Bailey.

Supporting Facts

Judge Leete, in his instruction to the jury on the issue of corpus delicti, charged the jury without objection as follows.

> "Now, in this case the Commonwealth has introduced evidence of various statements which they claim were made by the Defendant.  Before you can consider the statements as evidence against the Defendant you must first of all find that the crime was in fact committed and that the Defendant did in fact make the statement, otherwise it must be disregarded.  You may not consider the statements of the Defendant as evidence against the Defendant unless you find that the crimes in question were committed. This means that you must disregard the statement attributed to the Defendant unless you are satisfied beyond a reasonable doubt by other evidence in the case, that is to say other evidence outside of the alleged statements that a crime was committed, or that an injury was sustained in the process of committing a crime, that crime being committed by someone.  The other evidence does not need to show that the crime was in fact committed by the Defendant only that the crime was committed by someone.  The other evidence does not need to rule out all possibilities of

accident, justification or excuse or non criminal
means.  It is enough if you are satisfied beyond a
reasonable doubt that the circumstances are more
consistent with the injuries having resulted from the
crimes that I outline to you than from other means.
Again, the evidence does not need to tend to show that
the crime was committed by the Defendant only that a
crime was committed by someone.  Other evidence does
not need to rule out the possibility there might be
some defense.  There's enough if you are satisfied
beyond a reasonable doubt that the circumstances are
more consistent with the commission of a crime than
with the non commission of a crime or existence of a
defense.  In other words you have to make that
determination beyond a reasonable doubt before you can
consider the alleged statements attributed to the
Defendant.  Another way of saying that, is that before
the Defendant's admissions can be considered as
evidence of guilt you as jurors must first be
convinced beyond a reasonable doubt that the injuries
allegedly suffered here were caused by the crime
charged or the crimes I should say in this case.  And
you have to of course make that determination beyond a
reasonable doubt." (A-408, A-409)(emphasis added)
(N.T. 408).

Unfortunately, the instruction does not appear to be a

correct statement of the law since Judge Leete confused the

two tier approach to a corpus delicti charge.  Instead, he

commingled the standard for the first tier with the

standard for the second tier as the above highlighted

portions suggest.

The standard for a corpus delicti charge is set forth

by the Superior Court in Commonwealth vs. Ahlborn, 657 A.2d

518 (Pa. Super., 1995).

"Under Pennsylvania law, the application of the
corpus delicti rule occurs in two distinct phases.
The first phase involves the Court's application of a

22

rule of evidence governing the threshold question of
the admissibility of the confession.  In this first
phase of the rule's application, the Court must
determine whether the Commonwealth has proven the
corpus delicti of the crimes charged by a mere
preponderance of the evidence.  If the Court is
satisfied that, on the evidence presented, it is more
likely that not that a wrong has occurred through
criminal agency, than the confession and/or admissions
of the defendant are admissible.... The second phase
of the rule's application occurs after a confession
has already been admitted into evidence.  After the
Court has made its initial determination that the
Commonwealth has proved the corpus delicti by a
preponderance of the evidence and has ruled the
confession to be admissible, the corpus delicti rule
additionally requires that the Commonwealth prove to
the jury's satisfaction beyond a reasonable doubt, the
corpus delicti of the crimes charged.... Nevertheless,
the law of Pennsylvania continues to require that the
Commonwealth prove the existence of the corpus delicti
beyond a reasonable doubt before the jury may consider
the defendant's confession.  A jury instruction to
that effect is, therefore, crucial, since the
confession may be admitted into evidence upon a
presentation of the corpus delicti by a mere
preponderance." Id 521.

Judge Leete, in his charge, essentially negated the

reasonable doubt standard by qualifying the charge with a

preponderance of the evidence standard.

"There's enough if you are satisfied beyond a
reasonable doubt that the circumstances are more
consistent with the commission of a crime than with
the non commission of a crime or existence of a
defense." (A-409, N.T. 408).

Further, Judge Leete, in his charge, never stated it was

the Commonwealth's duty to prove beyond a reasonable doubt,

he only stated it must be proven beyond a reasonable doubt

and then he negated reasonable doubt with his more consistent or preponderance of the evidence language. Further, he improperly added "defense" in the context of a more likely than not standard.  The Superior Court dismissed this issue by noting the Superior Court was unconvinced the jury would be confused since the Judge had properly instructed on the general burden of proof (Superior Court Memorandum, pages 13, 14).  But, a fair reading of the charge clearly raises serious questions that the jury was misled.

Mr. Fink, the trial counsel, did not object to this improper charge and was ineffective for not doing so.  As a result, the jury was given the improper instruction as to when Mr. Bailey's statement could be utilized and, further, in terms of evaluating any defense he might offer.

Mr. Bailey further contends Judge Leete erred in admitting testimony on the issue of corpus delicti.  The expert testimony all gave definitions of abuse that contained non criminal but negligent elements.  The radiologist, Dr. Dellaire, defined abuse as intentional or unintentional means (A-73).

Question:   "You've also said that it is more likely than not that it comes from child abuse, which you have defined as injury to a child mental or physical coming from an intentional or unintentional act.  Have I

24

summarized that correctly?"

Answer: "Yes." (A-74, N.T. 73).

The orthopedic surgeon, Dr. Supinski, said the injuries were caused by child abuse (A-103, N.T. 102). Yet, he admitted his definition of abuse included neglect (A-122, N.T. 121). He also said his definition included the lack of proper parenting (A-122, N.T. 121).

Dr. Asar, the pediatrician, gave an opinion as to abuse but also appeared to qualify her opinion to encompass neglect (A-135, A-147, N.T. 134, 135).

Mr. Bailey contends Judge Leete erred since the three experts, in their somewhat conflicting and confusing testimony, did not demonstrate that the injuries more likely than not occurred through criminal agency since the doctors all suggested non criminal and neglect issues. Therefore, the corpus delicti was not made out.

Mr. Bailey respectfully requests that his Habeas Corpus Petition be granted since the jury was improperly charged on the corpus delicti issue and his counsel was ineffective for not correcting the charge. He also contends his conviction should be reversed and his case dismissed since Judge Leete erred in admitting his confessions since the corpus delicti of the crime was not made out.

F.   Ground Six - <u>The verdict was against the weight of</u>
<u>the evidence and the evidence was insufficient to support</u>
<u>the verdict</u>.

Supporting Facts

Mr. Bailey respectfully contends the verdict
convicting him of aggravated assault and endangering the
welfare of children was against the weight of the evidence
and the evidence was insufficient to support the verdict.

The essence of Mr. Bailey's position on the
sufficiency of evidence and weight of the evidence focuses
on the expert testimony which has been summarized in the
preceding section of this Petition.  That also is
incorporated by reference.  As noted in the preceding
section, each of the three experts gave their opinion as to
child abuse but each of their definitions included aspects
of non-criminal conduct.  Mr. Bailey respectfully contends
these opinions did not meet the corpus delicti and,
therefore, his statement should not have been admitted.

Further, the Commonwealth, in its own case, presented
specific evidence that demonstrated the rib injuries were
not caused by Mr. Bailey or by any criminal conduct through
the testimony of its own witness, Tammy Baker, the aunt of
the minor child.  Ms. Baker clearly testified that she

26

observed how the injury happened and it had nothing to do
with Mr. Bailey but rather with a wrestling incident
involving the older brother with the baby (A-227, N.T.
225).

    Question:   "Now, what was the first time that you
                  noticed about any injury or apparent
                  injury to Rebecca?"

    Answer:   "When she was real little, her older brother
                had been wrestling around and fell on her.
                She was just a few months old and she had
                hurt her rib area."

    Question:   "How do you know that?"

    Answer:   "That he hurt her rib area because there was
                a small black and blue mark.  She was tender
                to touch, we had to be careful how we
                carried her." (A-227, N.T. 225).

The direct eyewitness testimony reveals the clear
weakness of the "abuse opinion" of the three experts.

The statement of Mr. Bailey which was admitted, if
read closely, does not indicate that he said he hurt the
child but only that he is speculating that some activities
of his may have caused the injuries (A-24 - A-31, See
Statement of Banks).  For instance, Mr. Bailey, in his
statement, apparently trying to come up with some
explanation as to how the child injured her ribs, said as
follows.

    "Well, I picked her up - I picked her up like you
    would normally pick up a child, but with me being

angry, I probably squeezed just a little too tight."
(A-27, Statement of Banks).

Clearly, this answer, which is similar to his other answers
where he was speculating as to the other injuries in his
statement, is nothing more than a guess.  Fortunately for
Mr. Bailey, Tammy Baker told the truth at least as to the
rib injury.

The evidence was undisputed that Mr. Bailey was not
the primary caretaker and, in fact, was hardly ever alone
with the child.  The mother, Lori Moore, was the primary
caretaker (A-195, N.T. 193).  The mother, Lori Moore, could
not remember any time when Mr. Bailey was ever alone with
the child (A-197, N.T. 195).  There were also a number of
other people who had access to the child during pertinent
times including Tammy Baker, the brother Michael and the
other siblings of varying ages (A-187, A-200, A-218, A-223,
A-226, N.T. 185, 198, 216, 221, 224).

There was no direct testimony about Mr. Bailey doing
anything improper to the child other than the testimony of
the child, Alan Moore, who saw Mr. Bailey pull the child
out of the car seat (A-183, A-184, N.T. 181, 182).  The
police said the child previously had not made that
statement (A-260, A-261, N.T. 258, 259).  There were others

who had equal access to the child and who were with the child far more than Mr. Bailey.

Mr. Bailey respectfully requests this Honorable Court grant him this Habeas Corpus since the evidence was insufficient to support the same and the verdict was against the weight of the evidence.

G.   Ground Seven - <u>The testimony of the expert doctor witnesses was improper when each one gave their opinion that there was abuse.  Further, the expert testimony was improper due to contradictory expert opinions.  Trial counsel was ineffective for not properly objecting or preserving these issues</u>.

<u>Supporting Facts</u>

As set forth in earlier sections of this Petition, each of the three doctors who testified as Commonwealth experts gave their professional opinion that there was child abuse and then defined child abuse to include both criminal and negligent acts.  There was no objection to that testimony.

The expert testimony will be incorporated by reference and not reiterated.

The testimony of the doctors was highly unusual.  The jury heard each doctor give his or her opinion with

reasonable medical certainty that there was child abuse but then heard definitions of abuse that included aspects which were non-criminal in nature, as previously noted.

The problem with the testimony of the three doctors in the present case is that their definitions of abuse also encompassed injuries by accidental means. The doctors did not give their opinion on battered child syndrome but gave a far broader opinion. There is no case law that allows such a broad statement of abuse.

The abuse definition severely prejudiced Mr. Bailey because the jury heard opinions that the child suffered from child abuse when, in fact, the child abuse definition was not necessarily criminal in nature.

Further, the problem was compounded by the fact that the prosecution's experts gave conflicting and contradictory expert testimony. The radiologist, Dr. Dellaire testified the leg injuries were by pulling and twisting (A-56, N.T. 55). The orthopedic surgeon, Dr. Supinski, absolutely disagreed that was the cause of the injuries (A-110, N.T. 109).

There was no objection by trial counsel in the record on these issues and trial counsel was ineffective for not

doing so.  Mr. Bailey respectfully requests this Honorable

Court grant his Petition for Habeas Corpus.

Respectfully Submitted,

Samuel C. Stretton, Esquire
Attorney for Petitioner,
Mark Bailey
301 South High Street
P.O. Box 3231
West Chester, PA  19381-3231
(610) 696-4243
Attorney I.D. No. 18491

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARK BAILEY, PETITIONER    :
                           :

         VS.            :  NO.

                           :

WARDEN EDWARD BRENNAN OF   :
SCI-ALBION and D. MICHAEL  :
FISHER, ATTORNEY GENERAL   :
OF PENNSYLVANIA           :

### CERTIFICATE OF SERVICE

I hereby certify I am this date serving a copy of my Entry of Appearance and Petition for Writ of Habeas Corpus in the captioned matter upon the following persons and in the manner indicated below, which service satisfies the requirements of Pa. R.A.P. 121.

Service by First Class Mail addressed as follows:

1.   Honorable D. Michael Fisher
    Attorney General of Pennsylvania
    Office of the Attorney General
    15th Floor, Strawberry Square
    Harrisburg, PA  17120

2.   Jeffrey Leber, Esquire
    Office of District Attorney
    P.O. Box 123
    Coudersport, PA  16915
    814-274-8174
    (Represents Commonwealth of Pennsylvania,
    Respondent)

3.   Warden Edward Brennan
    SCI-Albion
    10745 Route 18
    Albion, PA  16475-0002

4.  Mark Bailey
    DN-0370
    10745 Route 18
    Albion, PA  16475-0002

5.  Martha Bailey
    161 N. Bennett Street
    2nd Floor
    Bradford, PA  16701

Respectfully submitted,

_____
2/20/01

Date

Samuel C. Stretton, Esquire
Attorney for Petitioner,
Mark Bailey
301 S. High St.
P.O. Box 3231
West Chester, PA  19381
(610) 696-4243
Attorney I.D. No. 18491