**See Attachment**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARK BAILEY,                          :
      Petitioner

                        :

      vs.               :   CIVIL ACTION NO. 1:CV-01-0327

                        :

WARDEN EDWARD BRENNAN, of
SCI-Albion, and                       :
D. MICHAEL FISHER, Attorney
General of Pennsylvania,              :
      Respondents



M E M O R A N D U M

## I.   <u>Introduction</u>.

      A Pennsylvania jury convicted Mark Bailey of four counts
of aggravated assault and one count of endangering the welfare of
a child.  The victim was a seven-month-old infant.  Petitioner
received an aggregate sentence of ten to twenty years.

      Bailey has filed a counseled petition under 28 U.S.C. §
2254 seeking to vacate his convictions and sentence.  The basic
thrust of the petition is that the prosecutor violated due process
by relying mainly upon "other acts" evidence painting Petitioner
as a bad person, and then the prosecutor inflamed the jury by
using this other-acts evidence in his closing.  Petitioner has
also made claims, among others, related to the weight and
sufficiency of the evidence, whether certain expert medical
testimony was sufficient to establish the corpus delicti under

Certified from the record
Date 2/5/02
Mary E. D'Andrea, Clerk
Per _____
Deputy Clerk

Pennsylvania law, and whether the trial court erred in its instructions on corpus delicti.

II.    Background.

In June 1997, Bailey was charged in an information with four counts of aggravated assault, four counts of simple assault, and four counts of endangering the welfare of a child.  The counts related to four fractures found on Rebecca Moore, the infant victim, arising from four separate incidents.  The fractures were to: (1) the area around the right ankle; (2) the right shin bone; (3) the area around the left ankle; and (4) the rib cage at the right sixth rib and the left seventh rib.

The fractures were discovered when Rebecca's mother, Lori Moore, and Petitioner, the mother's live-in companion at the time, took Rebecca on September 24, 1996, to the hospital for treatment of the right-ankle fracture.  An x-ray disclosed a fracture at the end of the right lower leg that was a type of fracture suspicious of child abuse, a so-called bucket-handle or corner fracture.  X-rays of the other extremities were then taken, revealing the other, older and healing fractures.

In December 1997, a jury trial was held in the Court of Common Pleas of Potter County, Pennsylvania.  In pertinent part, the trial proceeded as follows.  The Commonwealth put on the testimony of three witnesses, a radiologist at the hospital, an orthopedic surgeon practicing at the hospital, and Rebecca's

2

pediatrician.  They were qualified as experts, and they all testified that the fractures, given their nature and number in a child so young, were consistent with child abuse.  Additionally, the radiologist opined, and the pediatrician agreed, that the explanation given for the right-ankle fracture, that Rebecca's older sister, Jennifer, had fallen on her, was not consistent with the type of fracture suffered.

The trial court then ruled that the Commonwealth had met its burden of establishing the corpus delicti.  Consequently, it allowed a Pennsylvania state trooper to testify to admissions Petitioner made to him on February 27, 1997, shortly before an audiotape was made of an interview with Petitioner.

The trooper testified that he mirandized Bailey, and Bailey signed a waiver form.  The trooper stated that Bailey "confessed to me being involved in four different broken bones, areas of the right leg, left leg, the ribs . . . ."  (Record at p. A-157).  Bailey said he did it because of "his anger" and because Rebecca "reminded him of his other child."  (Id.).

The trial court also allowed the audiotape to be played.  On the tape, Petitioner described how the fractures might have happened.  He stated that the right-ankle injury that led to the hospital visit "could have been caused" while he was holding Rebecca above his head in one hand, playing with her on the day before the visit.  She started to fall and he grabbed her by the leg, pulling her into his chest so that she would not fall to the

3

floor.  He said that the rib fracture "may" have been caused when he "picked her up too hard," "squeezed just a little too tight," at a time when he was "upset."  He stated that one of the other fractures "may have happened" when he "dragged her out of the car" one day and "her leg was up against the car seat" as he pulled the car seat out.  The final fracture "could have happened" when he took her out of the crib one day, and her leg got caught between the bars, "vibrat[ing] the whole crib."  (Id. at pp. A-24-A-28).

The audiotape was not edited.  Consequently, the jury heard Petitioner's remarks about other matters.  In response to questioning, he talked about being treated at Bradford Hospital to control his temper, that he had taken medication for his temper, that he had struck his ex-girlfriend and had struck Lori Moore.

The Commonwealth also called Alan Moore, Rebecca's nine-year-old brother.  He testified that on one occasion he saw Bailey "yank" Rebecca out of a car seat when he "was in one of his mad attitudes."  (Id. at p. A-183).  Her leg got stuck and she cried.

Lori Moore also testified in the Commonwealth's case, stating that Petitioner told her he told the troopers that he had done it.  (Id. at p. A-193).  As part of her cross-examination, after she volunteered that Jennifer had had similar bruises on her body, defense counsel asked her if the symptoms ran in the family. Lori Moore responded affirmatively and said that her pediatrician gave her several different answers for the condition, from dry skin to whatever.  (Id. at A-200).  On redirect, the prosecutor

4

brought out that Jennifer's bruises did not begin to appear until Petitioner began living with her.  (Id. at A-208-A-209).

Tammy Baker, Lori Moore's sister, also testified for the Commonwealth.  On cross-examination, defense counsel brought out that Rebecca and Jennifer had the same type of bruising between their toes.  (Id. at A-230-A-231).

The defense put on three witnesses.  The first was Brother Michael Hicks, a member of a Catholic religious order, with whom Petitioner had lived for several years and who had significant contact with Petitioner and Lori Moore.  Hicks testified that he had seen "a good rapport between Mark and the baby," that Petitioner had shown gentleness, caring and concern for Rebecca.  (Id. at A-288).  He also had a good rapport with the other two children although the relationship with the mother was a struggle.  In his opinion, there was never any intention to harm the children.

The Commonwealth cross-examined the witness about some statements Petitioner had made on the tape, that he had been treated at Bradford Hospital for his temper and that he had hit a previous girlfriend.  The witness admitted that Bailey's temper was "strong," that he knew Bailey was taking medication to control his temper, and that he knew Petitioner had struck the old girlfriend.  Hicks also testified that he had been informally counseling Petitioner about striking other people.

5

The second witness was Bailey's mother.  She testified that, based on her observations, Petitioner had a good relationship with Lori Moore's children and loved them.  She recited one incident to support her conclusion.  She never saw him physically harm a child and opined that he would never do so.  She also believed that Petitioner and Lori had gotten along fine, from what she could tell.

On cross-examination, the Commonwealth questioned her about her son's inability to control his anger, and she responded that his diabetes causes him problems.  The prosecution also asked her if he had ever hit his girlfriend, and she responded that she was unaware if he had.  She was also questioned about his treatment at Bradford Hospital and smashing windshields.

Petitioner also took the stand.  On direct, he stated that he had diabetes and that it often caused him to be agitated. He denied causing any of the fractures, and explained the audiotape by stating that the troopers had told him he would only be fined if he made the admissions.  He therefore did so to get everything over with and to stop the harassment.

On cross-examination, the prosecutor questioned him about the medication he was taking to control his anger, about his temper, and about his windshield smashing, which Petitioner said was a lot more than nine times, mostly with his fist but once with a teeter bar.  On re-cross, he was also questioned about how often he visited his son.

6

In his closing, defense counsel argued that Petitioner had not really confessed to harming Rebecca and that if he had injured her, it was unintentional, resulting from negligent play with the infant or from diabetes.  He referred to Petitioner as a "fine young man" and then as a "very good young man" whom the Commonwealth was trying to convict by circumstantial evidence.

In his own closing, the prosecutor rebutted the defense position that Petitioner was a fine young man by making reference throughout his closing to the incidents of smashed windshields and Petitioner's temper.  He also referred to the bruises on Jennifer, Rebecca's older sister, Petitioner's apparent failure to see his own son as often as he could under a custody agreement, and opined that he was a young man in trouble with himself.  The prosecutor also asserted that Bailey was an abuser of children and an abuser of babies and described him as an "unstable and angry and violent person" who takes it out on "the most defenseless of human beings, a child less than eight months old."  (Id. at A-390).  At another point, he rhetorically asked if Bailey was "just a pathetic human being, or someone just so "sick that [he] can't control himself, or "an evil sadistic person who enjoys inflicting pain on a child."  (Id. at A-389).  The prosecutor's closing also discussed the evidence and why it rebutted Petitioner's claim of innocence.  The prosecutor also stated that the jury was not there to decide whether Bailey was a good young man or a bad young man but whether he had committed the crimes charged.  (Id. at A-380).

As part of his charge, the trial judge charged the jury that Petitioner could only be found guilty using the reasonable-doubt standard, defining reasonable doubt as doubt that would cause reasonable persons to hesitate to act in a matter of utmost importance in their own affairs.  In instructions under the corpus delicti rule, the court advised the jury that they could use Petitioner's admissions against him only if they were first satisfied beyond a reasonable doubt that the crimes had been committed, by someone, not necessarily by Petitioner.  In part, the court stated, "It is enough that you are satisfied beyond a reasonable doubt that the circumstances are more consistent with the injuries having resulted from the crimes that I outline to you than from other means."  (Id. at A-408).  Reiterating, the court stated, "There's enough if you are satisfied beyond a reasonable doubt that the circumstances are more consistent with the commission of a crime than with the non commission of a crime or existence of a defense.  In other words, you have to make that determination beyond a reasonable doubt before you can consider the alleged statements attributed to the defendant."  (Id. at A-409).

The trial court also instructed the jury that they were the triers of fact (Id. at A-396) and that the attorneys' arguments were not evidence.  (Id. at A-399).  Further, while they could look to the attorneys' arguments, the jurors should first determine if the arguments are supported by the evidence and if

8

they appeal to the jurors' "sense of reason and good judgment."
(Id. at A-400).

At the request of defense counsel, the court also gave a cautionary instruction concerning the prosecutor's reference to the bruises on Jennifer. The jury was instructed as follows:

> Ladies and gentlemen of the jury, in the
> course of closing remarks there was (sic)
> references made to Jennifer Moore, who
> apparently is Rebecca's older sister. I want
> to point out to you that Jennifer is not
> alleged to be a victim here, and to the extent
> it has been suggested that she is in some
> manner involved or a victim of any criminal
> acts attributed to the defendant, to the
> extent that has been suggested you should
> totally and completely disregard it. This
> case has allegations of multiple incidents,
> which I'll get into, but it has essentially an
> allegation of one defendant and one victim.

(Id. at A-393-A-394).

III.  Standard of Review.

Under section 2254, federal habeas courts review state criminal convictions for violations of "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). They do not correct errors in state law. See Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-80, 116 L.Ed.2d 385, 396 (1991); Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997). Additionally, even on federal law issues, they reverse a state-court decision only when the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

9

determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  See generally, Moore v. Morton, 255 F.3d 95, 104-05 (3d Cir. 2001).  Further, a petitioner must have exhausted state-court remedies before filing a federal habeas petition.  See 28 U.S.C. § 2254(b)(1)(A).

IV.   Discussion.

At the outset, we note that Petitioner cites no federal case law to support his claims, relying instead on state-law cases.  The petition is therefore subject to dismissal for making only state-law claims and, possibly, for failing to exhaust state-court remedies as to federal claims.  Nonetheless, to avoid having to decide whether Petitioner has fairly presented his federal claims to the state courts, see Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), and because it appears that the claims have no merit under federal law in any event, we will address them.  Our headings are almost identical to Petitioner's phrasing of his claims.

A.   Unrelated Bad Acts Evidence Brought Out by Trial Counsel and the District Attorney Tainting Petitioner and Denying Him His Right to Due Process and a Fair Trial.

Petitioner claims his trial counsel was ineffective in bringing out on cross-examination: (1) of Lori Moore that Jennifer had bruises similar to those suffered by Rebecca; and (2) of Tammy

10

Baker that Jennifer had similar bruising to Rebecca's.  He also claims that the prosecutor improperly used the following bad-acts evidence, among others, to convict him without any attempt to justify their use such as to show motive or intent: (1) the bruises Jennifer had suffered did not start until her mother began living with Petitioner; (2) Bailey's admissions on the audiotape that he had a bad temper and had struck two girlfriends; (3) defense witness Hicks' admission that Bailey had a bad temper with reference to the admission on the tape, that Bailey had struck an old girlfriend, and that Hicks had been informally counseling Petitioner about his temper; (4) Petitioner's mother's cross-examination about whether he had ever hit his girlfriend, his treatment at Bradford Hospital and his smashing windshields; and (5) Petitioner's cross-examination about the medication he was taking to control his anger, about his temper, about his windshield smashing, and re-cross about how often he visited his son.

We reject this claim.  As to defense counsel's questioning, given the expert testimony and the taped admissions, he was not ineffective in raising the issue of similar bruising on Jennifer as a trial strategy to raise doubt about how Rebecca was injured.  That the prosecutor responded to this strategy did not make trial counsel ineffective.

As to the prosecutor's references to other-acts evidence, it is difficult for us to believe that habeas counsel

11

has read the same record we have.[1]  The Commonwealth did not attempt to convict Bailey by proving prior bad acts.  Rather, its case was based on expert testimony, Petitioner's taped confession, and his admissions to the troopers.  The prosecutor only got into bad-acts evidence after defense counsel opened the door on cross-examination of the Commonwealth's witnesses or after the defense used a strategy of not only denying that Petitioner had committed the crimes but, by way of Hicks' and Petitioner's mother's testimony, also asserting that he was not the type of person who would have committed them.  In these circumstances, federal law condones the prosecutor's conduct.  See Fannon v. Johnston, 88 F. Supp. 2d 753, 763 (E.D. Mich. 2000)(collecting cases).

    B.  Trial Counsel Was Ineffective for Not
        Requesting, and the Trial Judge Erred
        in Not Giving, Limiting Instructions or
        Curative Instructions Concerning
        Unrelated Bad Acts and/or Criminal
        Conduct of Mr. Bailey.

    Petitioner next contends that trial counsel erred in not objecting to the bad-acts evidence and that the trial court erred in not giving a limiting instruction on the use of such evidence.  Since we have already decided that the Commonwealth did not err in its references to other acts, this claim fails.

_____

    [1]Habeas counsel was not trial counsel but did represent Petitioner in his state-court appeals.

12

C. <u>The District Attorney Made an Improper
Closing Speech to the Jury by Giving
Statements of Personal Opinion Regarding
Petitioner's Guilt, by Arguing that Petitioner
Was a Bad Person and Therefore
Guilty, by Repeatedly Referencing Unrelated
Bad Acts and by Arguing in a Highly
Inflammatory Manner</u>.

As part of this claim, Petitioner contends that in his

closing the prosecutor improperly gave his personal opinion,

although Petitioner does not specify as to what.  Bailey points to

the following portion of the prosecutor's closing discussing the

Pennsylvania corpus delicti rule:

> It's a relatively simple concept, and I
> believe there was abundance of testimony from
> all those doctors that were involved before
> any confession was admitted into evidence, any
> admission that was made that became a part of
> the record that there was an instance of child
> abuse.

(Record at A-377).  He also relies on this small portion of the

closing, beginning with the boldface:

> I suggest to you the amount of recklessness
> that is engaged in by Mr. Bailey and not to
> mention his girlfriend, Lori Moore, I'll talk
> more about that, **I think clearly establishes
> the recklessness to show that this man is
> guilty of the charges of which he faces a
> requisite of the recklessness.**

(<u>Id.</u> at A-384).

Vouching violates a defendant's Sixth Amendment rights

because it implies to the jury they should trust the prosecutor

because he is aware of evidence that has not been presented to

them.  See <u>United States v. Molina-Guevara</u>, 96 F.3d 698, 704 (3d

13

Cir. 1996).  However, there was no vouching here because the
prosecutor obviously relied on the evidence of record in making
his arguments, not on his personal opinion.  We can only speculate
as to why Petitioner makes a vouching claim, but it may be because
the prosecutor used the words "I believe" and "I think."  However,
that is not vouching, as long as the prosecutor bases his personal
belief on record evidence.  "Vouching is distinguishable from a
personal opinion based on the evidence presented at the trial."
United States v. Dispoz-O-Plastics, Inc., 172 F.3d 275, 283 (3d
Cir. 1999).

        The next part of this claim is that the prosecutor
improperly argued in his closing that the jury should convict
Bailey because he was a bad person, repeatedly referencing
unrelated bad acts.  We reject this position.  We have reviewed
the prosecutor's closing.  Contrary to Petitioner's claim, he did
not argue that Bailey should be convicted because he had committed
prior bad acts.  He argued from the evidence bearing directly on
Petitioner's guilt for the offenses charged.  The prosecutor did
discuss other-acts evidence, and did argue that Petitioner was a
bad person, but that was only to rebut the defense's closing
argument that Bailey was not guilty because he was a fine young
man.  Because the defense opened the door to this line of
argument, the prosecutor's remarks were proper.  Cf. Dispoz-O-

Plastics, supra, 172 F.3d at 284 (discussing the "invited response" doctrine).

Petitioner next argues that the prosecutor closed in a highly inflammatory manner, referring to Bailey as an abuser of children and an abuser of babies, describing him as an "unstable and angry and violent person" who takes it out on "the most defenseless of human beings, a child less than eight months old," and rhetorically asking if Bailey was "just a pathetic human being, or someone just so "sick that [he] can't control himself, or "an evil sadistic person who enjoys inflicting pain on a child." The prosecutor also mentioned Bailey's failure to visit his own son and to Jennifer's bruising.

The prosecutor's remarks may leave something to be desired, see Toney v. Anderson, 142 F.3d 436 (6th Cir. 1998) (unpublished disposition at 1998 WL 68919, at *3), but even if we assume that they were improper, we do not believe we can disturb Petitioner's conviction.

Before granting relief based on improper prosecutorial remarks, a federal habeas court:

> must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant.

Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001). Under this standard, we do not believe Petitioner can prevail.

15

First, the prosecutor's remarks were made in response to the defense position that Bailey was a fine young man.  Second, although the remarks were "colorable pejoratives," see United States v. White, 241 F.3d 1015, 1023 (8th Cir. 2001), their content was closely tied to evidence at trial made relevant by the defense strategy.[2]  Third, a "curative instruction" was given when the court told the jury that they were the sole triers of the facts, that the attorneys' arguments were not evidence, and that while they could look to the attorneys' arguments, the jurors should first determine if the arguments were supported by the evidence and if they appealed to the jurors' sense of reason and good judgment.  See Darden v. Wainwright, 477 U.S. 168, 182, 106 S.Ct. 2464, 2472, 91 L.Ed.2d 144, 158 (1986).  Fourth, the evidence against Petitioner was overwhelming.  As the medical experts established, based on the nature and number of fractures, Rebecca had suffered child abuse.  Petitioner also essentially confessed on tape that he had committed the acts.  Lori Moore and the state trooper confirmed this by testifying that he admitted the same to them.  Finally, Alan Moore testified that he saw Petitioner violently pull Rebecca from her car seat, testimony consistent with Bailey's taped admission that one of the fractures

---

[2]An exception was the one directed to visits with his son and this one remark by itself would not cause us to vacate the conviction.  Additionally, the reference to Jennifer's bruising was corrected by a curative instruction.

16

"may have happened" when he "dragged her out of the car" one day and "her leg was up against the car seat."

> D. Trial Counsel Was Ineffective for Not
> Presenting Character Testimony on
> Behalf of Petitioner.

Petitioner asserts that his trial counsel failed to present character or reputation testimony on his behalf. This argument is frivolous.

First, a state defendant seeking federal postconviction relief has the obligation to aver facts showing he is entitled to relief. See Zettlemoyer v. Fulcomer, 923 F.2d 284, 291 (3d Cir. 1991)(habeas petitioner must allege facts that, if proven, would entitle him to relief). Except for his mother, Petitioner does not allege the names of the persons willing to provide such testimony or the specific testimony they would provide as to Petitioner's character or reputation.

Second, as part of a valid ineffectiveness claim, Petitioner must show that his trial counsel's failure to call these witnesses prejudiced his defense. See Weeks v. Snyder, 219 F.3d 245, 257 (3d Cir. 2000). Petitioner has not attempted such a showing. Indeed, if such witnesses had been called, it appears that it would have opened the door to all the "bad acts" evidence that Petitioner has been insisting the Commonwealth should not have been allowed to use.

17

E. <u>The Trial Judge Erred in His
Application of the Corpus Delicti
Rule Both as to Admissibility of
Evidence and His Instructions to
the Jury and Trial Counsel Was
Ineffective for Not Objecting.</u>

The Pennsylvania corpus delicti rule is a rule of evidence in criminal cases that requires the Commonwealth to prove that a crime has been committed before a defendant's admissions can be allowed into evidence. <u>Commonwealth v. Friend</u>, 717 A.2d 568, 572 (Pa. Super. 1998). Its purpose is to insure that a confession is not used against a defendant to convict him of a crime that did not happen. <u>Id.</u> at 569. The rule governs the trial in two respects. First, the Commonwealth must prove that the crime occurred (not that the defendant also committed it) by a preponderance of the evidence before the confession can be admitted. Second, the jury can only consider the confession if it is satisfied beyond a reasonable doubt that the crime has been committed. <u>Id.</u> at 570.

Petitioner argues that the trial judge erred in deciding that the corpus delicti had been established, thereby permitting his admissions into evidence, because the experts defined abuse not only as intentional acts but also as negligent ones.

As noted when we set forth our standard of review, federal habeas courts do not review issues of state law. Thus, because it involves a state-law issue, we need not consider this claim. <u>See Lucas v. Johnson</u>, 132 F.3d 1069, 1078 (5th Cir.

18

1998)(refusing to review a Texas corpus delicti issue); <u>Jacobs v. Horn</u>, 129 F. Supp. 2d 390, 416-17 (M.D. Pa. 2001)(refusing to review the Pennsylvania Supreme Court's interpretation of the Pennsylvania corpus delicti rule); <u>Emerson v. Smith</u>, 2001 WL 561212, at *12 (E.D. Mich. 2001)(same as to the Michigan corpus delicti rule).

 Petitioner also argues that the trial court erred in instructing the jury on the corpus delicti rule for the jury's guidance in using Petitioner's admissions. Specifically, Bailey argues that the trial court mistakenly allowed the jury to rely on his confession by permitting them to find the corpus delicti upon only a preponderance of the evidence, rather than upon a finding beyond a reasonable doubt.

 Unlike Petitioner's corpus delicti claim concerning the admissibility of his admissions, a claim that the trial court's instructions permitted a finding of guilt on less than reasonable doubt does state a federal due process claim cognizable in habeas corpus. See <u>Victor v. Nebraska</u>, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994); <u>Government of the Virgin Islands v. Parrilla</u>, 7 F.3d 1097 (3d Cir. 1993). However, there was no error in the court's instructions.

 Petitioner's claim is based on the court's use of the phrase "more consistent with . . . than from other means" in instructing the jury on the corpus delicti issue. Bailey contends that this allowed the jury to find the corpus delicti by a mere

19

preponderance of the evidence.  The argument must fail because in context the instructions clearly required the jury to find the corpus delicti beyond a reasonable doubt.  The court first gave an instruction on the reasonable-doubt standard that Petitioner does not challenge.  Then the court required the jury to find the corpus delicti beyond a reasonable doubt, with no mention of preponderance of the evidence.  In part, the court stated, "It is enough that you are satisfied beyond a reasonable doubt that the circumstances are more consistent with the injuries having resulted from the crimes that I outline to you than from other means."  (Id. at A-408).  Reiterating, the court stated, "There's enough if you are satisfied beyond a reasonable doubt that the circumstances are more consistent with the commission of a crime than with the non commission of a crime or existence of a defense. In other words, you have to make that determination beyond a reasonable doubt before you can consider the alleged statements attributed to the defendant."  (Id. at A-409).

Petitioner's argument draws its support from Pennsylvania case law, which uses the "more consistent with . . . than" language to describe the evidentiary test the trial court must use in deciding to admit a defendant's confession.  See Friend, supra, 717 A.2d at 569.  However, since the trial court instructed the jury on what the reasonable-doubt standard required, because it did not mention the preponderance-of-the-evidence standard, nor instruct on how it should be employed, and

20

because lay jurors normally do not read judicial opinions, we are confident that the trial court committed no error in using this language in instructing the jury.  It also follows that trial counsel was not ineffective in failing to object to the instructions.

F.    The Verdict Was Against the Weight
      of the Evidence and the Evidence Was
      Insufficient to Support the Verdict.

Bailey argues that the verdict was against the weight of the evidence.  We need not consider this claim.  A weight-of-the-evidence argument is not cognizable in federal habeas.  See Alamo v. Frank, 1999 WL 79659 (E.D. Pa.); Scibilia v. Yukins, 2001 WL 1680284 (E.D. Mich.).

A claim that the evidence is insufficient to sustain the verdict is cognizable in habeas corpus as a due process claim. See Jackson v. Byrd, 105 F.3d 145 (3d Cir. 1997).  The test is whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Id. at 148 (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979))(emphasis in Jackson v. Virginia).  This standard is satisfied here.

The basis of this claim is that the experts' definition of child abuse included negligent, as well as intentional, acts. However, we, like the trial judge, consider the most important aspect of their testimony their conclusion that the number and

21

type of fractures in a child so young indicated there was intentional child abuse.  In combination with our review of the evidence above in connection with the claim of inflammatory prosecutorial remarks, there was sufficient evidence to sustain this conviction.

      G.   <u>The Expert Medical Testimony Was Improper</u>
            <u>And Contradictory And Trial Counsel Was</u>
            <u>Ineffective For Not Objecting to It.</u>

Petitioner argues that the testimony of the three medical experts was improper because they all testified that child abuse could be negligent, as well as intentional, conduct. Additionally, the radiologist and the orthopedic doctor differed as to the cause of the right-ankle fracture.  The former said it was from twisting or pulling and the latter from the application of direct force.

Assuming that this presents a due process claim, we reject these contentions.  As noted above, the important aspect of the experts' testimony is their conclusion that the number and type of fractures in a child so young indicated there was intentional child abuse.

We will issue an appropriate order.

William W. Caldwell
United States District Judge

Date:  February 5 , 2002

22

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARK BAILEY,                          :
        Petitioner

                                      :

    vs.                               :    CIVIL ACTION NO. 1:CV-01-0327

                                      :

WARDEN EDWARD BRENNAN, of
SCI-Albion, and                       :
D. MICHAEL FISHER, Attorney
General of Pennsylvania,              :
        Respondents

O R D E R

AND NOW, this 5th day of February, 2002, it is ordered
that:

    1.  The petition under 28 U.S.C. § 2254 is
denied.

    2.  A certificate of appealability is
denied.

    3.  The Clerk of Court shall close this
file.

William W. Caldwell
United States District Judge

FILED

FEB 5 2002

PER _____
HARRISBURG, PA.        DEPUTY CLERK

Certified from the record
Date 2/5/02
Mary E. D'Andrea, Clerk
Per _____
Deputy Clerk

AO 72A
(Rev.8/82)

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

* * MAILING CERTIFICATE OF CLERK * *

February 5, 2002

Re:  1:01-cv-00327   Bailey v. Brennan

True and correct copies of the attached were mailed by the clerk
to the following:

Samuel C. Stretton, Esq.
301 South High St.
P.O. Box 3231
West Chester, PA  19381

Jeff Leber, Esq.
Potter County District Attorney
30 1/2 East Second St.
Coudersport,   16915

Francis R. Filipi, Esq.
Attorney General's Office
Strawberry Square
15th Floor
Harrisburg, PA  17120

cc:
Judge                        ( ✓ )              ( ✓ ) Pro Se Law Clerk  Taggau
Magistrate Judge             ( )                ( ) INS
U.S. Marshal                 ( )                ( ) Jury Clerk
Probation                    ( )
U.S. Attorney                ( )
Atty. for Deft.              ( )
Defendant                    ( )
Warden                       ( )
Bureau of Prisons            ( )
Ct Reporter                  ( )
Ctroom Deputy                ( )
Orig-Security                ( ✓ )
Federal Public Defender      ( )
Summons Issued               ( )      with N/C attached to complt. and served by:
                                       U.S. Marshal ( )     Pltf's Attorney ( )

Standard Order 93-5          ( )
Order to Show Cause          ( )      with Petition attached & mailed certified mail
                                       to:  US Atty Gen  ( )    PA Atty Gen ( )
                                            DA of County ( )    Respondents ( )

Bankruptcy Court             ( )

Other_____( )

MARY E. D'ANDREA, Clerk

DATE: _____2/5/02_____

BY: _____
    Deputy Clerk